UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In re:

Sandra Jo Bruess,                                                  Chapter 7
                                                                   Bky. No. 14-34922

          Debtor.

_____

Sandra Jo Bruess,

          Plaintiff,                                              Adv. No. 18-03097

v.

Michael S. Dietz, Trustee,

          Defendant.

---

**ORDER FOR JUDGMENT**

---

This matter came before the Court on cross-motions for summary judgment filed by the Plaintiff, Sandra Jo Bruess ("Debtor"), and the Defendant Michael Dietz, Trustee of the Debtor's Chapter 7 bankruptcy estate ("Trustee"). Each party claims ownership of a legal malpractice claim that arose from negligent legal advice provided to the Debtor prior to her petition for Chapter 7 relief and which resulted in the reduction of the Debtor's claimed homestead exemption. For the reasons stated below, the Court grants the Trustee's motion for summary judgment and declares the bankruptcy estate owns the claim.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *09/30/2019*
Lori Vosejpka, Clerk, by WM

## Procedural History And Undisputed Facts

The Debtor petitioned for Chapter 7 relief on December 15, 2014. [Dkt. No. 29 at 2, ¶ 6]; see Petition, In re Bruess, No. 14-34922 (Bankr. D. Minn. Dec. 15, 2014).[1] The Debtor claimed an exemption of $562,760.33 in her one-third interest in an agricultural homestead property (the "property") under Minn. Stat. § 510.02 and 11 U.S.C. § 522(b). [Dkt. No. 29 at 2, ¶ 7]. The Debtor's father transferred the one-third interest in the property to the Debtor on January 14, 2013, approximately 700 days before the Debtor petitioned for Chapter 7 relief. [Id. at 1, ¶¶ 3, 8]. The property, as a whole, had an appraised value of $1,800,000.00 in April 2014. [Id. at 1, ¶ 4].

On February 6, 2015, the Trustee objected to the amount the Debtor claimed for the homestead exemption because the Debtor acquired her interest in the property within 1215 days of filing the Chapter 7 petition, requiring the Debtor's homestead exemption be limited to $155,675.00 pursuant to 11 U.S.C. § 522(p). [Id. at 2, ¶ 8]; Motion Objecting to Homestead Exemption, In re Bruess, No. 14-34922 (Bankr. D. Minn. Feb. 6, 2015). On March 31, 2015, the Court sustained the Trustee's objection and limited the Debtor's exemption to $155,675.00 because the Debtor acquired the interest within 1215 days of the bankruptcy filing. [Dkt. No. 29 at 2, ¶ 9]. The Debtor appealed the Court's order and the Bankruptcy Appellate Panel for the 8th Circuit affirmed the Court's decision. [Id. at 2, ¶ 10].

The Debtor received a discharge on April 8, 2015. Order Discharging Sandra Jo Bruess, In re Bruess, No. 14-34922 (Bankr. D. Minn. Apr. 8, 2015). On May 17, 2016, the Court approved the Trustee's motion to sell the Debtor's interest in the property to the Debtor's brother for $400,000.00. [Dkt. No. 29 at 2, ¶ 11]; Order for Sale Free and Clear of Interests, In re Bruess, No.

---

[1] References to the record of this adversary proceeding are placed in brackets and identify the docket number. References to the record of the bankruptcy case identify the document and the date it was filed.

14-34922 (Bankr. D. Minn. May 17, 2016).   The Trustee distributed $155,675.00 of the sale proceeds to the Debtor reflecting the allowed homestead exemption and applied the remaining funds from the sale of the property to the Trustee's fees and attorney's fees and approximately 44% of the total claims of unsecured creditors.  [Dkt. Nos. 1 at 4, ¶¶ 19-20; 24 at 1, ¶ 1; 29 at 2, ¶ 12].  The case was closed on January 18, 2017 and the Trustee was discharged as trustee.  [Dkt. Nos. 1 at 4, ¶ 21; 24 at 1, ¶ 1]; see Order, In re Bruess, No. 14-34922 (Bankr. D. Minn. Jan. 18, 2017).

On November 7, 2018, the Court granted the U.S. Trustee's application to reopen the Debtor's bankruptcy case to appoint a trustee to investigate the value of, and to administer any proceeds from, a malpractice claim the Debtor pursued against her bankruptcy attorney.  [Dkt. Nos. 1 at 4, ¶ 24;  24 at 1, ¶ 2]; United States Trustee's Application to Reopen Case; In re Bruess, No. 14-34922 (Bankr. D. Minn. Nov. 7, 2018); Order to Reopen Case, In re Bruess, No. 14-34922 (Bankr. D. Minn. Nov. 7, 2018).  The Trustee was reappointed as trustee.  Appointment of Michael S. Dietz and Approval of Bond, In re Bruess, No. 14-34922 (Bankr. D. Minn. Nov. 7, 2018).

This adversary proceeding was commenced on December 7, 2018.  [Dkt. No. 1].  The Debtor sought a declaration that the malpractice claim against her former bankruptcy attorney (the "Original Bankruptcy Attorney") accrued after the bankruptcy was filed and, therefore, is not estate property under 11 U.S.C. § 541(a). [Dkt. No. 1 at 5].  The Debtor also sought a declaration that the Trustee lacks standing to pursue the malpractice claim on behalf of the estate because the malpractice claim is not an asset of the estate.  [Dkt. No. 1 at 6].  Finally, the Debtor sought a declaration that the malpractice claim replaced the Debtor's homestead exemption under 11 U.S.C. § 522(b)(3) and Minn. Stat. § 510.02 and therefore is an exempt asset.  [Dkt. No. 1 at 7].  The Trustee answered and filed a counterclaim requesting a declaration that the malpractice claim is

the sole property of the bankruptcy estate and, therefore, the Debtor holds no interest in it.  [Dkt. No. 24].  The parties filed cross-motions for summary judgment and a stipulation of undisputed facts.  [Dkt. Nos. 29-31].

The parties agree that the Debtor had an attorney-client relationship with the Original Bankruptcy Attorney and, in the course of that relationship, the Original Bankruptcy Attorney advised the Debtor to file for bankruptcy relief and advised her that the value of her interest in the homestead, $562,760.33, would be protected in bankruptcy.  [Dkt. No. 29 at 1-2, ¶ 5].  The parties agree that a malpractice claim exists against the Original Bankruptcy Attorney for his negligent advice.  [Id. at 3, ¶ 13].  The parties agree the Debtor had not suffered compensable harm or had an actionable legal malpractice claim prior to the day she filed her petition for relief.  [Dkt. Nos. 1 at 5, ¶ 29;  24 at 2, ¶ 3].

The Court held a hearing on the cross-motions for summary judgment on May 28, 2019.  The Court granted the parties the opportunity to further address an issue raised by the Debtor concerning whether the Trustee abandoned the estate's interest in the malpractice claim.  On June 7, 2019, the Debtor filed a supplemental brief in support of her argument that the Trustee abandoned the estate's interest in the potential malpractice claim.  [Dkt. No. 35].  On June 13, 2019, the Trustee filed a supplemental brief denying that he abandoned the estate's interest in the claim. [Dkt. No. 36].  On August 9, 2019, the parties stipulated to the dismissal of Counts II and III of the Debtor's complaint.  [Dkt. No. 38].  Following the submission of all supplemental briefs and the dismissal of Counts II and III, the Court took the cross-motions for summary judgment on the issue of ownership of the malpractice claim under advisement.

## Jurisdiction

The Court has jurisdiction over the case pursuant to 28 U.S.C. § 1334(a), (e), and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (O).  See In re Titan Energy, Inc., 837 F.2d 325, 328-29 (8th Cir. 1988) (concluding that declaratory actions to determine whether assets are property of the estate are core proceedings).  Pursuant to Federal Rules of Bankruptcy Procedure 7008 and 7012, the parties have consented to the entry of a final order or judgment by this Court.

## Legal Standard

Summary judgment is governed by Federal Rule of Civil Procedure 56, which is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056.  A party moving for summary judgment is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

When parties file cross-motions for summary judgment, each motion is considered independently.  In re Deppe, 217 B.R. 253, 259 (Bankr. D. Minn. 1998) (citing Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983)).  In considering a summary judgment motion, a court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986).  "In making this determination, the court is required to view the evidence in the light more favorable to the non-moving party and to give that party the benefit of all reasonable inferences to be drawn from the facts." AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Torgerson v. City of Rochester, 643 F.3d 1031, 1042-43 (8th Cir. 2011).

## Discussion

The parties agree that the only issue to be decided in this adversary proceeding is whether the estate holds an interest in the malpractice claim against the Original Bankruptcy Attorney under section 541(a). Section 541(a) provides, "The commencement of a case under section 301, 302, or 303 of this title creates an estate." Such estate includes, but is not limited to, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The definition of the estate under section 541(a) is broad, but it "was not designed to enlarge the debtor's rights against others beyond those existing at the commencement of the case." In re N.S. Garrott & Sons, 772 F.2d 462, 466 (8th Cir. 1985). The parties, while stipulating to the essential facts of this case, disagree concerning whether the legal malpractice claim existed at the "commencement of the case" or whether it accrued at a later time. The parties agree that if it existed pre-petition, the estate owns the claim but, if it accrued post-petition, the Debtor owns the claim.

The Debtor argues that the cause of action against the Original Bankruptcy Attorney did not arise until post-petition when the Court reduced her claimed homestead exemption, because that was the time at which the Original Bankruptcy Attorney's "negligence ripened to actual prejudice to the Debtor" and the Debtor "suffered an actionable loss (to the benefit of the bankruptcy estate)." [Dkt. No. 19 at 2, 5]. The Trustee, on the other hand, asserts that the malpractice claim "arose at the moment of the filing" and, therefore, the claim belongs to the estate. [Dkt. No. 32 at 2]. The Trustee argues that, under Minnesota law, the Debtor was damaged and the malpractice claim accrued upon filing the petition because it was at that point that the Debtor lost the ability "to remedy the fact that her homestead could not be fully exempted under applicable bankruptcy law." [Dkt. No. 30 at 8].

6

I.      **The Debtor's Interest In The Legal Malpractice Claim Arose Upon The Commencement Of The Case Under Minnesota Law.**

Section 541(a) defines the property of the bankruptcy estate.  It is well-established that "causes of action belonging to the *debtor* at the commencement of the case are included within the definition of property of the estate."  Mixon v. Anderson (In re Ozark Rest. Equip. Co.), 816 F.2d 1222, 1225 (8th Cir. 1987); see Moratzka v. Morris (In re Senior Cottages of Am., LLC), 482 F.3d 997, 1001 (8th Cir. 2007) ("Causes of action are interests in property and are therefore included in the [bankruptcy] estate" if they "belonged to the debtor at the time of filing bankruptcy.").  Any unresolved causes of action belonging to the debtor at the time of filing "pass to the trustee as representative of the estate."  Mixon, 816 F.2d at 1225.  The trustee has the responsibility under the Bankruptcy Code to "collect and reduce to money the property of the estate for which such trustee serves."  11 U.S.C. § 704(a)(1).  The trustee, therefore, "has standing under [section 704(a)(1)] to assert causes of action that belonged to the debtor at the time of filing bankruptcy."  Moratzka, 482 F.3d at 1001.

Because section 541(a) limits property of the estate to, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case," legal or equitable interests of the debtor that arise after filing for bankruptcy are not property of the bankruptcy estate.  See Drewes v. Vote (In re Vote), 261 B.R. 439, 442-44 (B.A.P. 8th Cir. 2001).  The trustee has no authority under section 704(a)(1) to administer the property or interests of the debtor acquired post-petition.  See id.

However, while section 541(a) defines the property belonging to the bankruptcy estate, courts must look to state law to determine whether a debtor had an interest in property at the time of filing for bankruptcy.  See Butner v. United States, 440 U.S. 48, 54-55, 99 S. Ct. 914, 917-18 (1979); In re WEB2B Payment Solutions, Inc., 815 F.3d 400, 405 (8th Cir. 2016); In re N.S.

Garrott & Sons, 772 F.2d at 466 ("Our inquiry must begin with state law for the Bankruptcy Code does not provide rules for deciding whether a debtor has an interest in any particular property.") Once the determination of the nature and extent of the debtor's interest in property is made under state law, "federal bankruptcy law dictates to what extent that interest is property of the estate." In re N.S. Garrott & Sons, 772 F.2d at 466.  As a result, Minnesota law governs when the malpractice claim arose.  Both parties agree.

Under Minnesota law, a malpractice claim accrues "when 'a plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted.'" Sec. Bank & Tr. Co. v. Larkin, Hoffman, Daly & Lindgren, Ltd., 916 N.W.2d 491, 496 (Minn. 2018) (quoting Frederick v. Wallerich, 907 N.W.2d 167, 173 (Minn. 2018)).  This requires the "the existence of operative facts supporting each element of the claim."  Id.  In Minnesota, the elements of a legal malpractice claim are: "(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of plaintiff's damages; and (4) that, but for the attorney's conduct, the plaintiff would have obtained a more favorable result in the relevant matter."  Id.  Here, the parties agree that a legal malpractice claim exists against the Original Bankruptcy Attorney, but they disagree about when the claim accrued under Minnesota law.

Minnesota applies the "damage rule" for accrual of a legal malpractice claim.  Id. at 498. The damage rule requires "that 'some damage' has occurred as a result of the alleged professional negligence," but it does not require "that a prospective plaintiff be aware of all the operative facts giving rise to a cause of action."  Id. (citation omitted).  This rule differs from two other accrual rules utilized by other states—the "occurrence rule," which accrues simultaneously with the

performance of the act of professional negligence, and the "discovery rule," which accrues when the client knew or should have known the essential facts giving rise to the malpractice claim. Id.

In Security Bank & Trust Co. v. Larkin, Hoffman, Daly & Lindgren, Ltd., 916 N.W.2d 491 (Minn. 2018), the Minnesota Supreme Court recently examined the timing aspects of accrual of a legal malpractice claim. In Security Bank, the court examined when a malpractice claim accrued based on an attorney's negligent drafting of a provision in a will which resulted in a $1,654,000.00 generation-skipping transfer tax after the client's death. 916 N.W.2d at 494. The court concluded that "some damage" for purposes of accrual of a legal malpractice claim involves "concrete harm created either by financial liability or the loss of a legal right." Id. at 499. The court held that "[m]ere continued reliance by [a] client on allegedly negligent advice given earlier by the attorney is not sufficient to give rise to 'some damage.'" Id. Rather, a financial liability or loss of a legal right must result from the negligent advice for a legal malpractice claim to accrue. Id. On the basis of the specific facts in Security Bank, the court concluded that "some harm" did not occur until the client's death, when the estate became liable for the generation-skipping tax, and, therefore, the cause of action did not accrue during the client's lifetime. Id. In so holding, the Minnesota Supreme Court rejected the reasoning of the Minnesota Court of Appeals, which had held that the cause of action accrued when the will was executed and the estate was exposed to potential tax liability (notwithstanding that the will could have been changed at any point after it was executed to avoid the potential tax liability). See Sec. Bank & Tr. Co. v. Larkin, Hoffman, Daly & Lindgren, Ltd., 897 N.W.2d 821, 827 (Minn. Ct. App. 2017), rev'd, 916 N.W.2d 491 (Minn. 2018).

In reaching its conclusion in Security Bank, the Minnesota Supreme Court examined three other Minnesota Supreme Court cases concerning accrual of a legal malpractice claim: Herrmann

v. McMenomy & Severson, 590 N.W.2d 641 (Minn. 1999); Antone v. Mirviss, 720 N.W.2d 331 (Minn. 2006); and Frederick v. Wallerich, 907 N.W.2d 167 (Minn. 2018).

In Herrmann, clients brought a legal malpractice claim against their attorneys for failure to advise the clients concerning a series of prohibited transactions which resulted in federal tax liabilities.  590 N.W.2d at 642.  The court rejected the argument that the legal malpractice claim accrued when the clients discovered that the transactions were prohibited and began spending money to address the prohibited transactions.  590 N.W.2d at 643.  The court also did not hold that the cause of action accrued when the Internal Revenue Service (IRS) ultimately concluded, several years after the transactions occurred, that the clients were obligated to pay the taxes.  See id. at 642; see also 26 U.S.C. § 6501 (providing a three- or six-year limitations period for the IRS to assess or commence an action to collect excise taxes after a return is filed).  Rather, the court concluded that the legal malpractice claim arose when the first prohibited transaction occurred because it was at that point that the clients "became immediately liable for the excise tax and interest" required by federal law.  Herrmann, 590 N.W.2d at 643-44.  The later determination by the IRS that the client was obligated to pay the excise taxes was not the relevant point for accrual of the claim.  See id.

In Antone, the Minnesota Supreme Court held that a malpractice claim related to the negligent drafting of an antenuptial agreement accrued once the client entered into the marriage because it was at that point that the client "passed a point of no return with respect to the laws of marital and nonmarital property and . . . without the legal shield he retained [his attorney] to provide."  720 N.W.2d at 337.  The court concluded the consequences of entering the marriage without the legal protections of the antenuptial agreement "were both immediate and irremediable as of the date of the marriage."  Id.  The court stated,

> In essence, [the attorney's] representations caused [the client] to do something he would not have otherwise done because, from the moment the marriage was entered into, [the client's spouse] was legally entitled to make a claim upon a portion of any appreciation in his premarital property.  We conclude that this exposure was an injury that resulted in some damage sufficient to survive a motion to dismiss.

Id. at 337-38.

In the dissent, Justice Samuel Hanson of the Minnesota Supreme Court argued the following:

> [W]here liability is contingent on a future event that is not certain to occur, no compensable damage occurs unless and until that future event occurs.  Because any liability that [the client] might have incurred to [the client's spouse] by reason of their marriage was contingent, [the client] could not have suffered any compensable damage until the contingency occurred; that is, when [the client] filed for marital dissolution and either (1) the antenuptial agreement became operative by the issuance of the decree of marital dissolution, or (2) [the client] incurred expenses to defend against a potential liability that should have been prevented by the antenuptial agreement, whichever first occurred.

Id. at 338-39 (Hanson, J., dissenting).  But, the majority of the Minnesota Supreme Court rejected the dissent's argument that "some damage" occurred when the risk of loss became fixed or certain upon either the petition for dissolution or when the client spent money to defend from liability.  Id. at 338 (majority opinion).  In rejecting the dissent's argument that "some damage" occurred upon the manifestation of the contingency, the court reasoned that "some damage" actually occurred when "[the client] lost the legal right to unfettered ownership in his premarital property."  Id.  The majority did not hold that damage occurred when there was a legal challenge to the antenuptial agreement or a judicial determination.

In Frederick, the Minnesota Supreme Court concluded that two malpractice actions related to an antenuptial agreement accrued at different times. 907 N.W.2d at 179.  The first act accrued

upon marriage, when the antenuptial agreement failed to become effective because witness lines were left blank.  Id.  The second malpractice claim was based on the attorney's failure to ensure the antenuptial agreement's enforceability before incorporating it into a will.  Id.  The second act accrued for "some damages" purposes when the attorney drafted and executed the will, because it was at that point that the client "lost the opportunity to avoid" and "was exposed to" financial liability he otherwise could have mitigated had he been informed of the unenforceability of the antenuptial provision.  Id.

The question becomes, therefore, when under Minnesota law did the Debtor in this case lose the legal right to claim the full amount of the homestead exemption.  The Debtor argues she was not damaged until the Trustee timely objected to the claimed exemption.  In so arguing, the Debtor cites 11 U.S.C. § 522(l) [Dkt. No. 33 at 2], which provides that  "property claimed as exempt . . . is exempt" "[u]nless a party in interest objects."  Under Federal Rule of Bankruptcy Procedure 4003(b)(1), a party in interest only has 30 days to object to the claimed exemptions after the conclusion of the meeting of creditors or an amendment is made to the list of exemptions or supplemental schedules are filed.  If a party fails to timely object or request an extension of the time to object for cause, section 522(l) operates to make the property exempt from distribution regardless of "whether or not [the debtor] had a colorable statutory basis for claiming [the exemption]."  Taylor v. Freeland & Kronz, 503 U.S. 638, 643-44, 112 S. Ct. 1644, 1648 (1992).  Relying on this law, the Debtor argues that a malpractice claim did not arise, and could not have arisen, until the Trustee successfully objected because, until that time, the claimed exemption "had been deemed to be allowed" by section 522(l).  [Dkt. No. 33 at 3].

Under Minnesota law, whether the Trustee could have missed the deadline to object or chosen not to object in this case is not relevant to the inquiry of when the Debtor lost a legal right

for purposes of accrual.  The fact remains that the Trustee did object and the property was not exempt in the amount claimed by the Debtor.  If actions that did not occur were relevant inquiries to the determination of accrual of a legal malpractice claim, this Court is confident the Minnesota Supreme Court would have reached alternative resolutions in the cases cited above.  For example, in Antone, the court could have concluded that the malpractice claim related to the negligent drafting of an antenuptial agreement did not accrue until the parties to the antenuptial agreement decided to divorce or a final decree and judgment were entered as it was not until the parties decided to divorce that the drafting error became quantifiable.  720 N.W.2d at 337-38.  This was the argument raised by the dissent—that "some damage" cannot occur until a contingency is realized.  Id. at 341 (Hanson, J., dissenting).  In rejecting the dissent's analysis, the Minnesota Supreme Court concluded the claim accrued upon the entry of the marriage because the legal document became effective and at that point the premarital property interest at issue became irreparably fettered by the spouse's interest in any marital appreciation.  Id. at 338 (majority opinion).

In Herrmann, the court concluded that a malpractice claim accrued when the first transaction was entered into that would cause a tax liability, even though the IRS did not ultimately conclude that the client was liable for the taxes until several years later.  590 N.W.2d at 642. Arguably, as far as the clients knew at the time the transactions occurred, the IRS could have excused the tax liability or failed to assess the taxes within applicable limitations periods.  See 26 U.S.C. § 6501.  This is identical to the claim of the homestead exemption.  The Trustee could have, like the IRS, not objected by the objection deadline.

In Frederick, it was the loss of the opportunity to avoid financial liability that mattered for purposes of accrual, rather than the later challenge to the enforceability of the antenuptial

agreement.  907 N.W.2d at 180.  These cases demonstrate that a "wait-and-see" approach to accrual of a legal malpractice claim is not the standard in Minnesota.  Rather, if a legal right is lost because of an attorney's negligence, or financial liability results, the claim has accrued notwithstanding the fact that a party might not object.

Here, it is clear the Debtor lost a legal right as a result of the Original Bankruptcy Attorney's negligent advice to file for bankruptcy within 1215 days of acquiring her interest in real property.  See 11 U.S.C. § 522(p)(1)(A) (limiting the amount a debtor may claim as exempt concerning real property if acquired within 1215 days preceding filing the petition).  It was at the filing of the bankruptcy petition that the Debtor's interest in her homestead entered into the estate by operation of section 541(a)(1).  Although the Debtor claimed the homestead exempt from the estate in accordance with section 522(b), the claimed  homestead exemption did not become effective by operation of section 522(l) because a party in interest timely objected.  See Taylor, 503 U.S. 638, 642-43, 112 S. Ct. at 1647-48 (indicating that all of a debtor's assets become property of the estate by operation of section 541, but section 522(l) operates to make certain claimed property exempt from distribution if an objection is not filed); see also Schwab v. Reilly, 560 U.S. 770, 792, 130 S. Ct. 2652, 2667-68 (2010) ("If an interested party does not object to the claimed interest by the time the Rule 4003 period expires, title to the asset will remain with the estate pursuant to § 541, and the debtor will be guaranteed a payment in the dollar amount of the exemption.  If an interested party timely objects, the court will rule on the objection and, if it is improper, allow the debtor to make appropriate adjustments.").  The Debtor claims that "some damage" did not occur upon filing because whether the exemption would be disallowed depended on future contingent acts or omissions of the Trustee.  But, this argument is contrary to the

Minnesota Supreme Court's decisions and is similar to the argument raised by the dissent in Antone and rejected by the majority.

Upon filing at an improper time, the only recourse for the Debtor would be to wait and see if a party timely objected, or to request and receive a dismissal of her case and to later refile a case after the 1215-day period concluded. A motion by the Debtor to voluntarily dismiss the case under 11 U.S.C. § 707(a) would require notice to all creditors pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(4) and court approval. Undoubtedly, the Trustee or a creditor would have objected as they would lose the estate's substantial interest in the real property. Nevertheless, the Debtor did not seek dismissal of her case under 11 U.S.C. § 707(a). It was at the filing that the Debtor "passed the point of no return" and lost the legal right to control her interest in the homestead because it vested in the estate and became subject to the trustee's administration of estate assets.

While the Debtor's claimed homestead exemption was not challenged and rejected until after the case was commenced, this does not negate the fact that the Original Bankruptcy Attorney provided negligent advice to the Debtor to file for bankruptcy at a time when she would not have a legal right to the full homestead amount by operation of section 522(p). By filing, the Debtor turned over her assets to be administered in accordance with the Bankruptcy Code; this act was sufficient to constitute "some damage" under Minnesota law. The Debtor would have been entitled to claim the exemption without risk of an objection if she had not been advised by her attorney to file during the 1215-day period. The later discovery of the attorney's mistake and the Court's resulting order sustaining the Trustee's objection are not the relevant considerations for accrual under Minnesota law. See Security Bank, 916 N.W.2d at 498 (rejecting the discovery-rule for

15

accrual of a legal-malpractice case), 499 ("Some damage can occur, and a cause of action accrues, even where greater injury remains uncertain." (quotation omitted)).

Here, the cause of action for legal malpractice accrued when the Debtor, in reliance on the Original Bankruptcy Attorney's negligent advice, filed for Chapter 7 relief and exposed her interest in the homestead to administration by the trustee. While the ultimate damage was yet to be realized, the Debtor did experience "some damage" upon filing. The filing of the bankruptcy case is extremely similar to death (Security Bank, 916 N.W.2d at 499), marriage (Antone, 720 N.W.2d at 337-38), and an antenuptial agreement/will execution (Frederick, 907 N.W.2d at 180). The objection by the Trustee or the judicial determination were not the points when the claim accrued. The issuance of a decree of marital dissolution or the spending of money to defend against a liability which should have been prevented by the antenuptial agreement were raised by the dissent in Antone as the points of accrual and rejected by the Minnesota Supreme Court. Therefore, the clear decisions of the Minnesota Supreme Court require this Court to hold that the legal malpractice claim came into existence upon filing the bankruptcy and not upon objection by the Trustee or a judication determination by the Court.

## II.     The Cases Cited By The Debtor Are Not Decided By Minnesota Law.

Having determined that the malpractice claim accrued under Minnesota law at the filing of the petition, the Court now turns to a list of cases cited by the Debtor for the proposition that a legal malpractice claim related to the loss of a homestead exemption can only accrue post-petition. Nearly all of the cases rely on the law of other states as to when a claim arises and, therefore, are not relevant as to when the claim arises under Minnesota law.

The Debtor cites the following cases for the proposition that a legal malpractice claim that alleges loss of a homestead exemption accrues post-petition: Witko v. Menotte (In re Witko), 374

F.3d 1040 (11th Cir. 2004); <u>Church Joint Venture, L.P., v. Blasingame (In re Blasingame)</u>, 597 B.R. 614 (B.A.P. 6th Cir. 2019); <u>In re Purcell</u>, 573 B.R. 859 (Bankr. D. Kan. 2017); <u>Ostrander v. Van Dam (In re Mateer)</u>, 559 B.R. 1 (Bankr. D. Mass. 2016); <u>In re de Hertogh</u>, 412 B.R. 24 (Bankr. D. Conn. 2009); <u>Holstein v. Knopfler (In re Holstein)</u>, 321 B.R. 229 (Bankr. N.D. 2005); <u>Casey v. Grasso (In re Riccitelli)</u>, 320 B.R. 483 (Bankr. D. Mass. 2005); <u>Haaland v. Corporate Mgmt., Inc.</u>, 172 B.R. 74 (Bankr. S.D. Cal. 1989); <u>Seidler v. Swift (In re Swift)</u>, 114 F.3d 1183, 1997 WL 255592 (5th Cir. May 1, 1997); <u>Osborn v. Durant Bank & Tr. Co. (In re Osborn)</u>, Nos. 95-7118, 95-7124, 95-7121, 1996 WL 196695 (10th Cir. Apr. 24, 1996); <u>In re Riche</u>, Nos. 2:18-CV-01030 SJ02, 2:16-BK-17275-ER, 2018 WL 4676355 (C.D. Cal. Sept. 25, 2018); <u>Avery v. Mikkelsen (In re Mikkelsen)</u>, Nos. 16-01489-TLM, 18-06018-TLM, 2018 WL 4182448 (Bankr. D. Idaho Aug. 30, 2018); <u>Wisdom v. Gugino (In re Wisdom)</u>, Nos. 11-01135-JDP, 13-6045-TLM, 2016 WL 872102 (Bankr. D. Idaho Mar. 7, 2016); <u>Seaver v. Frundt (In re Hansel)</u>, Nos. 02-93495, 08-3177, 2012 WL 3113849 (Bankr. D. Minn. June 15, 2012) <u>report and recommendation adopted</u> No. 12-1631 (MJD/JJG), 2012 WL 3113785, at *1 (D. Minn. July 31, 2012); <u>Saunders v. United States (In re Saunders)</u>, Nos. 94-23489-BKC-RBR, 95-0475-BKC-RBRA, 2003 WL 23239155 (Bankr. S.D. Fla. 2003); and <u>Katz v. Kucej</u>, No. CV065004131S, 2010 WL 2574137 (Conn. Sup. Ct. 2010).  The Court has reviewed and considered all of the cases cited by the Debtor and rejects the Debtor's argument for the following reasons.

<u>Seaver v. Frundt (In re Hansel)</u>, Nos. 02-93495, 08-3177, 2012 WL 3113849 (Bankr. D. Minn. June 15, 2012), is the only case cited by the Debtor that considered when a cause of action for legal malpractice accrues under Minnesota law.  The court examined the point of accrual for a malpractice claim that centered on the revocation of the debtor's discharge and the creation of a personal financial liability to the bankruptcy estate which deprived the debtor of the right to retain

assets as exempt.  2012 WL 3113849, at *6-7.  The court stated that "neither of those losses ripened

in full" until the court rendered a decision in the adversary proceeding commenced by the trustee.

Id. at *7.  However, the court did not find the final decision and entry of judgment to be the point

of accrual.  Rather, the court stated:

> But that is not the telling point for the issue of accrual: jeopardy to
> the Debtor's rights in the bankruptcy process could have been
> prevented by a post-petition amendment and advice to like effect.
> This could have been done for some period of time after the
> bankruptcy filing, given the rather open-ended state of local
> authority on a debtor's right to amend claims of exemption.  In re
> Kaelin, 308 F.3d 885 (8th Cir. 2002); In re Ladd; In re Bauer, 298
> B.R. 353, 356 (B.A.P. 8th Cir. 2003) (all deferring to policy
> articulated on face of Rule 1009, toward liberality in allowing
> debtors to amend claims of exemption, subject only to disallowance
> on showing of bad faith on part of debtor or prejudice to creditors).
>
> The significance of that authority is that any pre-petition negligence
> on Frundt's part could have been cured without prejudice to the
> Debtor's interests, post-petition.   Under Minnesota law, any
> malpractice claim arising out of Frundt's action or inaction did not
> accrue until after his client was in bankruptcy.

Id. at *8.  The attorney's ability to correct his negligent advice after the debtor filed for bankruptcy

*without any prejudice to the debtor* was determinative to the court's analysis.  Therefore, In re

Hansel does not stand for the proposition that the loss of an exemption only accrues post-petition,

but rather that "some damage" for accrual occurs when the negligence cannot be remediated

without prejudice to the client.  Accord Antone, 720 N.W.2d at 337 (stating "some damage" occurs

when the attorney's negligence becomes "irremediable"). Here, no amendment to the Debtor's

exemptions could have cured the prejudice the Debtor suffered from the negligent advice as in In

re Hansel.  The negligent advice given to the Debtor to file within the 1215-day period of acquiring

property, and on which she relied, could not be cured post-petition.

All of the other cases relied upon by the Debtor were decided under the laws of other states. First, several of the cases upon which the Debtor relies arose in states that apply the discovery rule of accrual.  For example, in Church Joint Venture, L.P., v. Blasingame (In re Blasingame), 597 B.R. 614, 618 (B.A.P. 6th Cir. 2019), the bankruptcy court relied on Tennessee law.  Tennessee applies the discovery rule. See, e.g., Limor v. Buerger (In re Del-Met Corp.), 322 B.R. 781, 825 (Bankr. M.D. Tenn. 2005) (stating that, under Tennessee law, a legal malpractice claim accrues when, among other factors, "the client knows or should know the facts sufficient to give notice of that injury" (citing Cherry v. Williams, 36 S.W.3d 78, 83 (Tenn. Ct. App. 2000))).  Likewise, in Ostrander v. Van Dam (In re Mateer), 559 B.R. 1 (Bankr. D. Mass. 2016), the bankruptcy court applied Massachusetts law, which also applies the discovery rule. 559 B.R. at 7 (indicating that a malpractice claim accrues under Massachusetts law when the plaintiff discovers the harm and indicating that knowledge cannot be divorced from the damage requirement); see, e.g., Cantu v. St. Paul Cos., 514 N.E.2d 666, 668-69 (Mass. 1987) (requiring "a coalescence of discovery and appreciable harm" for accrual of a legal malpractice claim).  But see Casey v. Grasso (In re Riccitelli), 320 B.R. 483, 491 (Bankr. D. Mass. 2005) (discussing Massachusetts law but declining to apply the knowledge requirement for purposes of accrual).  Kansas and California have also adopted the discovery rule.  In re Purcell, 573 B.R. 859, 864 (Bankr. D. Kan. 2017) (applying the "discovery rule" under Kansas state law to accrual of a personal injury settlement and concluding any cause of action belonged to the debtor because the injury suffered by a medical device was not "discovered" until after the case was closed); In re Riche, Nos. 2:18-CV-01030 SJP, 2:16-BK-17275-ER, 2018 WL 4676355, at *3 (C.D. Cal. Sept. 25, 2018) (relying on California law, which follows the "discovery rule," and concluding that a claim for loss of a homestead exemption accrued post-petition when the trustee informed the debtors of the intent to sell the home).

In other words, under applicable law in these states, the claim clearly does not exist until post-bankruptcy because, frequently, the malpractice will not be discovered until an objection is filed.  These cases applying the discovery rule, rejected by the Minnesota Supreme Court, are simply irrelevant.

Second, Witko v. Menotte (In re Witko), 374 F.3d 1040, 1042-43 (11th Cir. 2004), an Eleventh Circuit case, is factually distinguishable from this case, as the malpractice did not arise from the filing of the bankruptcy petition or loss of an exemption, but instead arose from the denial of his request for alimony in a separate Florida state-court proceeding.  The decision to deny alimony in the separate proceeding was not made until months after the bankruptcy case commenced.  374 F.3d at 1042.  The court explained, "Witko's malpractice cause of action was unknown, not even rising to a hope; the most pessimistic curmudgeon could not anticipate that, months later, Witko would lose his alimony claim due to his attorney's malpractice."  Id. at 1044. Witko is distinguishable from this case, because, as the Court in Witko noted, the client did not suffer any harm and the claim did not accrue under Florida state law "prior to or contemporaneous with filing his bankruptcy petition."  Id.

Third, Osborn v. Durant Bank & Tr. Co. (In re Osborn), Nos. 95-7118, 95-7124, 95-7121, 1996 WL 196695 (10th Cir. Apr. 24, 1996) (applying Texas and Oklahoma law), and Haaland v. Corporate Mgmt., Inc., 172 B.R. 74 (Bankr. S.D. Cal. 1989) (applying California law), are likewise factually distinguishable.  In those cases, the courts did not rely on relevant state law for accrual of a legal malpractice claim, but rather, relied on specific state laws which permitted "the reinvestment of proceeds from a homestead within six months after the sale thereof" and declared "that proceeds of an insurance policy on a homestead are exempt."  1996 WL 196695, at *4; see Haaland, 172 B.R. at 78-79.  Because accrual of the property interest under state law is the relevant

inquiry in this matter, rather than state laws concerning proceeds from a sale of a homestead, the reasoning in Osborn and Haaland is not applicable. Moreover, the Debtor is no longer making an argument that the malpractice claim qualifies as proceeds of the homestead.  [Dkt. No. 38, at 1].

Fourth, the remainder of the cases cited by the Debtor concluded that the malpractice claim accrued after the bankruptcy petition was filed when: (1) the trustee challenged the claimed exemption; (2) the debtors lost their claimed exemptions or the debtors liquidated exempt assets; (4) a dischargeable debt was not discharged; or (5) the debtors were denied a discharge.  See In re de Hertogh, 412 B.R. at 31 (loss of homestead exemption); Holstein, 321 B.R. at 236 (denial of discharge); Casey, 320 B.R. at 492 (loss of homestead exemption); Avery, 2018 WL 4182448, at *3 (loss of homestead exemption); Wisdom, 2016 WL 872102, at *2 (liquidation of exempt assets); Katz, 2010 WL 2574137, at *4-5 (denial of discharge); Saunders, 2003 WL 23239155, at *8 (liquidation of exempt assets to pay dischargeable debt); and Seidler, 114 F.3d 1183, 1997 WL 255592, at *1 (loss of IRA exemption).  But, these cases were not analyzed utilizing Minnesota law on accrual of a legal malpractice claim as that law has been well developed in Minnesota by the Supreme Court of Minnesota.

The Connecticut, Maryland, and Idaho cases might appear to support the Debtor's position. But, they do not.  These cases concluded that the filing itself was not the moment of accrual under applicable state law. For example, in Casey v. Grasso (In re Riccitelli), 320 B.R. 483 (Bankr. D. Mass. 2005), the court recognized that it was the filing of the petition that "effectively closed the door" on the Debtor's ability to claim a homestead exemption and ultimately resulted in the loss of the homestead exemption, but that the damage did not actually occur until the homestead exemption was lost.  320 B.R. at 491.  Under Minnesota law, the moment the Debtor lost the ability to claim the full homestead would be the point of accrual of a legal malpractice claim, even though

the ultimate damage was yet to be realized.  It was at this point that the Debtor could no longer protect her full homestead.  See Frederick, 907 N.W.2d at 179 (concluding that the claim accrued when the client "lost the opportunity to avoid" and "was exposed to" financial liability he otherwise could have mitigated had he been properly informed by his attorney).

For the same reason, the Minnesota Supreme Court would reach a different decision in Katz v. Kucej, No. CV065004131S, 2010 WL 2574137 (Conn. Sup. Ct. 2010).  In Katz, the debtors' attorney made material omissions and mistakes in preparing the petition, schedules, and statement of financial affairs, which ultimately led to the denial of the debtors' discharge.  2010 WL 2574137, at *1.  The Superior Court of Connecticut concluded that the debtors' claims for malpractice did not accrue until after the case was commenced because "at the time such documents were filed any harm had not yet accrued." Id. at *4.  Specifically, the court held that no injury had occurred at the time the petition was filed.  Id.  But, in both Antone and Herrmann, the Minnesota Supreme Court held that damage occurred when documents drafted by attorneys failed to protect assets of the clients (such as at marriage) or caused the debtor to take some action that would lead to financial liability (such as a prohibited transaction), despite that the ultimate damage was yet to be decided or realized at that time.

Likewise, in In re de Hertogh, 412 B.R. 24 (Bankr. D. Conn. 2009), the court found that the harm occurred under Massachusetts law when the court disallowed the claimed homestead exemption.  However, the decisions of the Minnesota Supreme Court indicate that the point of "some damage" for accrual of a claim does not occur at the ultimate judicial determination.  For example, in Herrmann, it was not the point at which the IRS determined that taxes were owed that the cause of action accrued, but when the first prohibited transaction occurred that made the parties liable for the taxes.  590 N.W.2d at 644.  And, in Antone, it was not the judicial decision related

22

to the antenuptial agreement or the divorce that met the standard of "some damage" but the moment the marriage was entered into without the legal protections the party sought.  720 N.W.2d at 337-38.

For the same reasons, the courts in Avery v. Mikkelsen (In re Mikkelsen), Nos. 16-01489-TLM, 18-06018-TLM, 2018 WL 4182448 (Bankr. D. Idaho Aug. 30, 2018), and Ostrander v. Van Dam (In re Mateer), 559 B.R. 1 (Bankr. D. Mass. 2016), would have reached a different conclusion if Minnesota law was applied.  They all hold that accrual occurred at the occurrence of the contingent act discussed in the dissent in Antone, such as, in these cases, the objection by the trustee, or the judicial determination.  720 N.W.2d at 340 (Hanson, J. dissenting).  But, the majority of the Minnesota Supreme Court explicitly rejected the dissent's argument, 720 N.W.2d at 338 (majority opinion), and this Court is bound to apply Minnesota law on accrual of property interests. Therefore, while these courts reached different results when applying their state-specific law on when the damage occurred, the Court finds that the "some damage" required for a legal malpractice claim in Minnesota occurred upon the bankruptcy filing in this matter.

Finally, some of the cases cited by the Debtor relied on Segal v. Rochelle, 382 U.S. 375, 86 S. Ct. 511 (1966), to find the malpractice claims did not belong to the estate.  In Segal, the Supreme Court considered whether a claim for loss-carryback tax refunds could be property of the bankruptcy estate.  According to the Supreme Court, the claim for the loss-carryback tax refunds were "sufficiently rooted in the pre-bankruptcy past" such that they should be considered property of the bankruptcy estate.  382 U.S. at 380, 86 S. Ct. at 515.  The Court explained that the "two key elements pointing toward realization of a refund existed at the time these bankruptcy petitions were filed; taxes had been paid on net income within the past three years, and the year of bankruptcy at that point exhibited a net operating loss."  Id.  But, while some courts consider Segal, when making

23

a determination under section 541(a), other courts have called the applicability of <u>Segal</u> into question because it was decided before section 541 was codified and appears, to the point it is still relevant, to be limited to cases involving tax refunds.  See <u>Bracewell v. Kelley (In re Bracewell)</u>, 454 F.3d 1234, 1242 (11th Cir. 2006) ("The § 541(a)(1) definition, with its explicit temporal limitation, controls our analysis rather than <u>Segal</u>'s test."); <u>Burgess v. Sikes (In re Burgess)</u>, 438 F.3d 493, 498 (5th Cir. 2006) ("<u>Segal</u>'s 'sufficiently rooted' test did not survive the enactment of the Bankruptcy Code."); <u>Witko</u>, 374 F.3d at 1043 (reiterating that state law, rather than federal law, applies to the determination of property interests); <u>Vote</u>, 276 F.3d at 1026 ("To find for the trustee on the basis that the payments were 'sufficiently rooted' would allow the trustee to assert more rights than Vote had at the commencement of the case."); <u>In re Hansel</u>, 2012 WL 3113849, at *8 (concluding <u>Segal</u> "cannot possibly be applied to override the clear dictate of Minnesota law as to when this asset arose").  Because <u>Segal</u> does not appear to apply to determinations of when a property interest arose under state law for purposes of 11 U.S.C. § 541, the court declines to analyze the estate's interest in a legal malpractice claim under <u>Segal</u>'s approach.

The cases cited by the Debtor do not support finding the claim accrued post-petition.  They all rely on law of other states and some partially rely on <u>Segal</u>.  Minnesota law, as well developed in a series of Minnesota Supreme Court decisions is clear—the claim accrues upon the filing of the bankruptcy case.

### III.     The Estate Includes Interests In Property That Arise Upon Filing The Petition.

Having determined that the malpractice claim came into existence upon filing under clear Minnesota law, it must now be determined whether property interests that come into existence upon filing are property of the bankruptcy estate under 11 U.S.C. § 541 or property of the debtor. The Debtor did not present an argument on this issue, but the Court will nevertheless address

whether "as of commencement of the case" under section 541(a)(1) is limited to property that exists before or prior to commencement of the case, or if it can include property that arises simultaneously with the filing.

The language of section 541(a)(1) is determinative. If section 541(a)(1) used the word "before," or "prior to," it would be clear that the legal malpractice claim belonged to the Debtor, as it did not exist until the moment the case was commenced, and the estate would only be comprised of property existing before the filing. Congress has used the words "before" and "prior to" in other subdivisions of section 541 and the Bankruptcy Code. See 11 U.SC. § 541(b)(2) (using the phrase "before the commencement of the case under this title"); § 541(c)(1)(B) (using the phrase "before such commencement"); see also 11 U.S.C. §§ 365(g)(1), 348(d), 547(e)(2)(C), 548(d)(1) (all using the phrase "immediately before the date of the filing of the petition"), 522(p)(2)(B), 524(c)(4), 528(a)(1) (all using the phrase "prior to"). Congress clearly could have used such language in section 541(a)(1), as it does in other parts of section 541 and other parts of the Bankruptcy Code, if it only intended property that existed before the filing of the petition (and not property that came into existence simultaneously with the filing) to be included in the estate. See Running v. Miller (In re Miller), 778 F.3d 711, 715 (8th Cir. 2015) ("The use of different terms within related statutes generally implies that different meanings were intended." (quoting United States v. Bean, 537 U.S. 71, 76 n.4, 123 S. Ct. 584, 587 n.4 (2002) (other citation omitted))). Likewise, Congress has specifically used the word "after" in 11 U.S.C. § 541(a)(7) to include in the estate certain property acquired after the case is commenced. Therefore, the absence of the words "before," "prior to," or "after" in section 541(a)(1) indicates an intent by Congress to include property that exists before or arises simultaneously with the commencement of the case, but not property that comes into existence after the commencement of the case. See Winick & Rich, P.C.

v. Strada Design Assocs. (In re Strada Design Assocs.), 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005) ("If § 541(a)(1) was limited to pre-petition interests, any interests that arose at the time of filing would slip between [subsections 541(a)(1) and 541(a)(7)], and not become 'property of the estate.'").

Congress has used the phrase "as of the commencement of the case" in other portions of the Bankruptcy Code. For example, 11 U.S.C. § 544(a) provides the trustee with certain avoidance and strong-arm powers "as of the commencement of the case." Courts have interpreted this phrase in section 544(a) to mean "at petition filing." Casey v. Rotenberg (In re Kenny G. Enters., LLC), 512 B.R. 628, 635 (C.D. Cal. 2014) ("Congress's inclusion of the phrase 'as of the commencement of the case' strongly suggests that it only meant § 544 to apply to prepetition transfers. Since the trustee has these powers at petition filing, the transfer must necessarily have already occurred."). The moment of filing of the petition as the definition of "as of commencement of the case" is further bolstered by the definition of "as of." "As of," when used as a preposition, means "on" "at" or "from." Miriam Webster's Collegiate Dictionary 72 (11th ed. 2003). Substituting "at" into "as of commencement of the case" would include in the estate all interests of the debtor in property at the moment of filing the bankruptcy petition. If Congress intended a different result, it had the ability to use the words "prior to" or "before" as it routinely does in section 541 and in other provisions of the Bankruptcy Code. The use of "as of the commencement of the case" indicates that Congress intended "as of" to have a different meaning than "before" or "prior to." See Miller, 778 F.3d at 715.

At least one federal circuit court has held that property rights arise at the moment of filing under 11 U.S.C. § 541(a)(1). See Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A. v. Alvarez (In re Alvarez), 224 F.3d 1273, 1278 (11th Cir. 2000) (concluding that an interest in property that

arose "simultaneously with the filing" of the bankruptcy petition was property of the estate);

accord Witko, 374 F.3d at 1043 (distinguishing its decision from Alvarez because the malpractice

claim arose after the case commenced and not "contemporaneous" with the filing of the petition).

In Alvarez, the Court of Appeals for the Eleventh Circuit applied Florida law to determine

when a cause of action accrued for an attorney's negligent filing of a Chapter 7 bankruptcy rather

than a Chapter 11 bankruptcy.  224 F.3d at 1277.  After determining that the cause of action

accrued "at the moment of bankruptcy filing," the court held that the cause of action belonged to

the estate because it arose "simultaneously with filing."  Id. at 1278.  The court stated:

> To the extent that Alvarez suggests that redressable harm occurring
> at the instant of filing is insufficient to make this cause of action part
> of his bankruptcy estate because the estate includes only interests
> the debtor holds immediately prior to filing, and not those interests
> arising simultaneously with filing, we again disagree.  The plain
> language of § 541(a)(1) includes in the estate interests of the debtor
> "as of" filing, not interests of the debtor "before" or "prior to" filing.
> See Jones v. Hyatt Legal Services (In re Dow), 132 B.R. 853, 860
> (Bankr. S.D. Ohio 1991) (noting that the language "as of" is
> significant and holding that where damages caused by alleged
> malpractice occurred at the point of filing of the petition, the cause
> of action was property of the estate).  Moreover, Congress intended
> the scope of § 541(a)(1) to be broad.  See United States v. Whiting
> Pools, Inc., 462 U.S. 198, 204-05, 103 S. Ct. 2309, 2313 (1983); S.
> Rep. No. 95-989, at 82 (1978), reprinted in 1978 U.S.C.C.A.N.
> 5787, 5868; H.R. Rep. No. 95-595, at 367 (1977), reprinted in 1978
> U.S.C.C.A.N. 5963, 6323.  We thus conclude that, looking to state
> law, this interest in property arising simultaneously with the filing
> of Alvarez's bankruptcy petition was an interest of Alvarez in
> property "as of" the commencement of the case, and thus, property
> of the estate under § 541.

Id.

The Eleventh Circuit reasoned that property interests that arise simultaneously with the

filing of a Chapter 7 petition become property of the estate because it is at the moment of filing

the petition that the bankruptcy estate is created and "all the legal ramifications attendant to

creation of such an estate [come] into existence." Id. at 1277. As the filing of a petition is the commencement of a case, any property interests arising simultaneously with the filing of the petition must exist "as of" the commencement of the case. See Witko, 374 F.3d at 1044 (recognizing the estate includes assets that exist "prior to or contemporaneous with filing").

Several bankruptcy courts and federal district courts have reached similar conclusions after first determining that a property interest in a legal malpractice claim for negligent legal advice related to filing came into existence under state law at the filing of the petition. For example, in Winick & Rich, P.C. v. Strada Design Assocs. (In re Strada Design Assocs.), 326 B.R. 229, 237 (Bankr. S.D.N.Y. 2005), the Bankruptcy Court for the Southern District of New York concluded that a cause of action for legal malpractice arose at the filing of the petition where the attorney negligently advised the client to file under chapter 7 rather than chapter 11. In applying New York law, the court stated, "A cause of action for legal malpractice based on negligently advising a client to file a bankruptcy petition accrues, at the latest, at the time the petition is filed." 326 B.R. at 237. Because the court concluded that the claim accrued at the moment of filing under New York law, the claim belonged to the bankruptcy estate by operation of section 541(a)(1). Id.

Similarly, in Bounds v. Brown McCarroll, LLP (In re Bounds), 495 B.R. 725 (W.D. Tex. 2013), the District Court for the Western District of Texas concluded that a legal malpractice claim for negligently advising the client to file for bankruptcy without explaining the consequences that could result, such as the loss of their homestead exemption, accrued under Texas law contemporaneously with the filing of the bankruptcy petition because the debtor "followed his attorney's advice and filed for bankruptcy." 495 B.R. at 730-31, 733. Among the injuries suffered by the debtor at filing, including the loss of ownership of corporate assets sold by the debtor to pay the attorneys' retainer for filing the bankruptcies, was "the specific and concrete risk of losing his

homestead, which occurred at the time of the bankruptcy filing." Id. at 733 (quotation omitted). Because the claim accrued under Texas law at the moment of filing, the court concluded the malpractice claim belonged to the bankruptcy estate pursuant to section 541(a)(1). Id. at 732-33.

Likewise, in Jones v. Hyatt Legal Servs. (In re Dow), 132 B.R. 853, 860 (Bankr. S.D. Ohio 1991), the Bankruptcy Court for the Southern District of Ohio concluded that a legal malpractice claim for negligently causing the debtor to file for relief under Chapter 7 accrued under Ohio law "at the point of the filing of the petition." 132 B.R. at 860. Because the property interest arose at the filing of the petition, the court reasoned the property belonged to the estate. Id.

The Debtor argues Alvarez and Bounds are not applicable to this case and that the malpractice claim does not accrue until a legal determination is made that the claimed exemption is not permitted. But, as discussed above, that argument is contrary to the decisions of the Minnesota Supreme Court.

Therefore, the Court concludes that the cause of action arising upon the filing of the case under Minnesota law, belongs to the estate by operation of section 541(a)(1).

## IV. Section 550(d) Does Not Prohibit The Estate From Holding The Legal Malpractice Claim.

The Debtor argues that if the malpractice claim is property of the estate, then the estate would receive a double recovery, which, the Debtor argues, is prohibited by 11 U.S.C. § 550(d). [Dkt. No. 19 at 8-11]. The Trustee argues section 550(d) is inapplicable to the question of whether the estate or the Debtor owns the legal malpractice claim. [Dkt. No. 32 at 3]. The Trustee is correct.

Section 550(d) limits the trustee to "only a single satisfaction under subsection (a) of this section." Section 550(a) specifically references avoidance actions under sections 544, 545, 547, 548, 549, 553(b), or 724(a). It does not relate to actions to determine whether property belongs to

the estate under section 541(a)(1) or to objections to exemptions claimed under section 522.  The Debtor does not cite any other authority that prohibits the Court from declaring the legal malpractice claim as an asset of the estate under section 541(a)(1) despite the estate's previous reduction of the Debtor's claimed exemption.

The Debtor argues that it is inequitable to allow the estate to hold the legal malpractice claim arising from the loss of the homestead exemption after also recovering from the loss of the homestead exemption.  This Court is bound by 11 U.S.C. § 541(a)(1) as enacted by Congress and the Minnesota Supreme Court as it pertains to the creation of property interests and is powerless to consider fairness to the Debtor as a factor in deciding this case.  See Law v. Siegel, 571 U.S. 415, 425, 134 S. Ct. 1188, 1196-97 (2014).  Although irrelevant, the result in this case may not be as unfair as the Debtor contends.  At the motion hearing, the Trustee explained that he believes if the legal malpractice claim results as he anticipates, significant money should be available for the Debtor after the creditors are paid in full.

## V.     The Trustee Did Not Abandon The Estate's Interest In The Legal Malpractice Claim.

Finally, the Debtor argues the Trustee abandoned the estate's interest in the legal malpractice claim when the case was closed without administration of the asset.  [Dkt. No. 35]. Section 554(c) provides, "Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title."  The Debtor acknowledges that the legal malpractice claim was not specifically listed on her schedules, but argues the Debtor's description of her homestead in the schedules together with the claimed homestead exemption placed the Trustee on notice of a potential legal malpractice claim against the Original Bankruptcy Attorney for negligent advice.  [Id. at 3].  The Trustee argues that the schedules provided no notice

30

regarding the potential malpractice claim because there was no indication that the Original Bankruptcy Attorney provided negligent advice or failed to advise his client concerning the risk of claiming the homestead exemption.  [Dkt. No. 36].

The Debtor cites several cases for the proposition that an asset does not need to be scheduled with specificity in order to place the trustee on notice of the asset.  See Cusano v. Klein, 264 F.3d 936 (9th Cir. 2001); In re Furlong, 437 B.R. 712 (Bankr. D. Mass. 2010), aff'd, 450 B.R. 263 (D. Mass. 2011), aff'd, 660 F.3d 81 (1st Cir. 2011).  However, in these cases, the abandoned assets had been listed in some way on the schedules although additional investigation would be necessary by the trustee to determine the scope and value of the assets.  The legal malpractice claim in this case was not listed on the schedules in any manner as required by 11 U.S.C. § 554(c).

The Eighth Circuit made it clear in Vreugdenhill v. Navistar Int'l. Transp. Corp., 950 F.2d 524, 526 (8th Cir. 1991), "that in order for property to be abandoned by operation of law pursuant to section 554(c), the debtor must formally schedule the property before the close of the case.  It is not enough that the trustee learns of the property through other means; the property must be scheduled pursuant to section 521(1)."  See also Pace v. Battley (In re Pace), 146 B.R. 562, 564-66 (9th Cir. 1992) (concluding a malpractice claim described as "inextricably intertwined" with a promissory note was not abandoned when the note was abandoned because it was not scheduled).  Here, the legal malpractice claim was not scheduled prior to the close of the case as required.  Therefore, as it was not scheduled in any way, it was not abandoned.  Accordingly, under section 554(d), the legal malpractice claim remained property of the estate.

In any event, although the Trustee knew the homestead exemption was limited, he had no way of knowing the advice given to the Debtor in order to be on notice of the malpractice claim.  The Debtor does not suggest and did not present any evidence that the Trustee knew whether the

Original Bankruptcy Attorney informed the Debtor of the risk of claiming the homestead exemption before she filed for relief. No genuine issues of material fact were raised by the Debtor on this point. It is undisputed the Trustee only knew of the homestead limitation, not what advice was given to the Debtor.

It is undisputed that the malpractice claim was not scheduled as required by section 554(d). Accordingly, summary judgment is appropriate on the issue that the claim was not abandoned. Even if the Debtor was correct that the property did not need to be scheduled to put the Trustee on notice, it is undisputed that the Trustee did not know what advice was given by the Original Bankruptcy Attorney. The claim was not abandoned under section 554(d).

## Conclusion

Both parties sought a declaration concerning the ownership of the legal malpractice claim. While section 541(a)(1) dictates the property in the bankruptcy estate, Minnesota law dictates when the property interest arose. Here, the claim arose upon filing of the petition as clearly required by several Minnesota Supreme Court decisions, because it was at that point that the Debtor experienced "some damage." It was at the filing of the petition that the Debtor's interest in her homestead entered the estate and the Debtor had no ability to correct her attorney's mistake or protect her interest from distribution. The Debtor's position that the claim did not exist until a judicial decision was issued is contrary to established Minnesota law of the Minnesota Supreme Court. Property interests that arise contemporaneously with the filing of the petition, such as the malpractice claim in this case, become property of the estate pursuant to Congress's clear language in section 541(a)(1) indicating that the estate is comprised of any property interests of the debtor existing "as of the commencement of the case." Congress did not limit the estate to property existing "prior to" or "before" the commencement of the case in section 541(a)(1). Finally, as the

malpractice claim was never scheduled, it was never abandoned by the Trustee.  The parties agree, and the Court finds, there are no genuine issues of material fact that necessitate a trial.  Summary judgment is appropriate for the Trustee.

**IT IS HEREBY ORDERED:**

1.  The Trustee's Motion for Summary Judgment is Granted.

2.  The Debtor's Motion for Summary Judgment is Denied.

3.  The Complaint is dismissed.

4.   In accordance with the relief requested in the Trustee's Counterclaim, the Court declares the following: The legal malpractice claim against the Original Bankruptcy Attorney is property of the bankruptcy estate.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

DATED:  *September 30, 2019*

/e/ William J. Fisher
_____
William J. Fisher
United States Bankruptcy Judge