_____

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

Sandro J. Brueß,

                  Appellant,

v.

Michael S. Dietz, Trustee

                  Appellee.

_____

Civil No. 19-CV-02714-JRT
Bky No. 14-34922
Adv. No. 18-3097

_____

Appeal from the United States Bankruptcy Court for the District of Minnesota

_____

### APPELLEE'S RESPONSE BRIEF
_____

Respectfully Submitted
Attorneys for Appellee
Michael S. Dietz (Reg. No. 188517)
Aurora M. DeCook (Reg. No. 0399875)
Dunlap & Seeger P.A.
30 3rd Street SE, Suite 400
Rochester, MN 55904
507-288-9111
msd@dunlaplaw.com
adc@dunlaplaw.com

# TABLE OF CONTENTS

                                              Page

Table of Contents ............................................................................................ 1

Table of Authorities ........................................................................................ 2

Summary of Argument .................................................................................... 3

Argument ......................................................................................................... 4

  1. The Bankruptcy Court applied the correct standard in determining that the accrual of the legal malpractice claim occurred at the moment Appellant filed her bankruptcy ............................................................................................ 4

  2. The Debtor's Homestead Exemption is not effective as of the moment of the bankruptcy filing ................................................................................... 9

  3. The *In re Bounds* Case Supports the Decision of the Bankruptcy Court ........... 11

Conclusion .................................................................................................... 13

Certificate of Compliance ............................................................................. 14

# TABLE OF AUTHORITIES

Page

**Federal Statutes**

11 U.S.C. §541(a)(1)..................................................................................4, 9, 10

11 U.S.C. §522(q) ............................................................................................12

**Federal Supreme Court Cases**

*Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914(1979) ...........................................9

*Schwab v. Reilly*, 560 U.S. 770, 130 S.Ct. 2652, (2010)...........................................10

*Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, (1992) .......................10

**Federal Bankruptcy Cases**

*In re Bounds*, 495 B.R. 725 (W.D. Tex. 2013).....................................................11, 12

**Minnesota State Cases**

*Antone v. Mirviss*, 720 N.W.2d 331 (Minn. 2006) .................................................5, 6

*Hansen v. U.S. Bank N.A.*, 934 N.W.2d 319 (Minn. 2019)....................................7, 8

*Security Bank & Trust Co. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 915 N.W.2d 491 (Minn. 2018) ..........................................................................................4, 5

## SUMMARY OF ARGUMENT

All legal and equitable interests in property owned by the debtor as of the commencement of a bankruptcy case become property of the bankruptcy estate. A legal malpractice claim is property that may pass into the bankruptcy estate. The determination of when a malpractice claim begins its existence is made by reference to state law.

Under Minnesota law, a claim accrues when the party has suffered "some damage." In Minnesota the courts apply two different legal standards to determine whether a malpractice claim has accrued. The standard to be applied depends upon whether the damage suffered is a financial liability or the loss of a legal right. When the damage suffered is a financial liability, the damage must be noncontingent and at least partly ascertainable. When the damage suffered is the loss of a legal right, the damage may be contingent upon a future event, but the loss of the legal right must be irredeemable. In this case, the Appellant lost the legal right to control her assets, including her homestead, at the moment she filed her bankruptcy. The Bankruptcy Court correctly determined that this loss of the right to control her assets was sufficient damage for the malpractice claim to accrue, even though the trustee had not yet objected to the Appellant's claimed homestead exemption.

## **ARGUMENT**

### 1. The Bankruptcy Court applied the correct standard in determining that the accrual of the legal malpractice claim occurred at the moment Appellant filed her bankruptcy.

The Bankruptcy Code provides that the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). In this case the Appellant has asserted that her attorney committed malpractice because he failed to advise her that her homestead exemption would be limited to only $170,350.00, thus leaving a portion of the equity she had in her homestead unprotected from administration by the Trustee. The sole issue in dispute in this appeal is: when, precisely, did that malpractice claim spring into existence? If it was before, or at the moment of, the Appellant's bankruptcy filing, the malpractice claim is the property of the bankruptcy estate. If it did not come into existence until after the moment of the bankruptcy filing, the malpractice claim is the Appellant's sole property. The Minnesota standard for the accrual of a legal malpractice claim *does not* require that all contingencies for the prosecution of the claim have been met.

The controlling legal standard in Minnesota regarding the moment at which a legal malpractice case accrues is set forth in the Minnesota Supreme Court decision *Security Bank & Trust Co. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 915 N.W.2d 491 (Minn. 2018). In *Security Bank,* the Court concluded that the "damage rule" requires "that 'some damage' has occurred as a result of the alleged professional

negligence," but it does not require "that a prospective plaintiff be aware of all of the operative facts giving rise to the cause of action." *Id.* at 496. The Court further sharpened the standard by concluding that "some damage" involves "concrete harm created either by financial liability or the loss of a legal right." *Id. 499.*

In this case, the Bankruptcy Court concluded that the Appellant, Debtor, was damaged at the point she filed her bankruptcy case, because, "It was at the filing that the Debtor 'passed the point of no return' and lost the legal right to control her interest in the homestead because it vested in the estate and became subject to the trustee's administration of estate assets." App.1 at 15. The Bankruptcy Court's reference to the "point of no return" is a reflection of the Supreme Court's analysis in *Security Bank*. In *Security Bank,* the Supreme Court surveyed its previous decisions regarding the point at which "some damage" occurs. One of these cases, *Antone,* in particular is conceptually identical to the principles in play in this case.

In *Antone,* the Supreme Court held that a malpractice claim related to the negligent drafting of an antenuptial agreement accrued upon the plaintiff's marriage, because at that point the plaintiff "passed the point of no return with respect to the laws of marital and nonmarital property … without the legal shield he retained his attorney to provide." *Antone v. Mirviss*, 720 N.W.2d 331, 337 (Minn. 2006). The Court reasoned that the consequences of entering into the marriage without an antenuptial agreement "were both immediate and irremediable as of the date of the marriage." *Id.*

5

The Court stated "We conclude that this exposure [to the potential loss of assets] was an injury that resulted in some damage sufficient to survive a motion to dismiss." *Id.* at 337-38.

On appeal, as she did before the Bankruptcy Court, the Appellant argues that she sustained no damage until the Trustee objected to her homestead exemption and that exemption was sustained. Thus, she argues the claim did not accrue until after her bankruptcy filing, and is not property of the bankruptcy estate.

In arguing that the accrual of the malpractice claim required that the contingency of an exemption objection be met in a case in which the damage is the loss of a legal right, the Appellant is advancing a standard that was expressly rejected by the Minnesota Supreme Court. In *Antone,* the <u>dissent</u> reasoned that it would have required that the contingency of a divorce filing have occurred before they would have found that the malpractice claim related to the antenuptial agreement had accrued, stating:

> [W]here liability is contingent on a future event that is not certain to occur, no compensable damage occurs unless and until that future event occurs. Because any liability that [the client] might have incurred to [his spouse] by reason of their marriage was contingent, [the client] could not have suffered any compensable damage until the contingency occurred; that is, when [the client] filed for marital dissolution ….

*Id. at 338-39.* The Appellant's argument here, that there was no damage until the contingency of an exemption objection, is identical to the position advanced by the dissent – which was rejected by the majority in *Antone*. In rejecting the dissent's "contingency standard" the majority of the Court reasoned that "some damage"

6

occurred when "[the client] lost the legal right to unfettered ownership in his premarital property." *Id.* Likewise, here the Bankruptcy Court correctly concluded that "some damage" occurred when the Appellant filed her bankruptcy petition and lost control of all of her assets, including her homestead.

Contemporaneously with the decision of the Bankruptcy Court in this case, the Minnesota Supreme Court issued another decision regarding the "some damage" standard for the accrual of a cause of action. *See Hansen v. U.S. Bank N.A.*, 934 N.W.2d 319 (Minn. 2019). In this new decision interpreting the *Security Bank* and *Antone* cases, the Supreme Court clarified that "some damage" may occur either by the creation of a financial liability, or by the loss of a legal right. If the damage is in the form of creating a financial liability, the claim must be non-contingent. If the damages are in the form of a loss of a legal right, as here, it may be contingent, but must be irredeemable. *Id.* at 328. The Supreme Court in *Hanson* laid out the analysis of "some damage" as follows:

> We have recognized that some damage may be "created either by financial liability or the loss of a legal right." *Sec. Bank & Tr. Co.*, 916 N.W.2d at 499. Some damage in the form of financial liability accrues when the resulting liability is immediate, concrete, compensable, noncontingent, and at least partly ascertainable. *See id.* at 498; *see also MacRae*, 753 N.W.2d at 719–20 (noting that damages must have actually occurred, be "compensable," and not "abstract"). Stated another way, some financial damage occurs when the plaintiff first actually loses money or otherwise suffers financial harm. The exact amount of financial loss need not be ascertainable for damage to have accrued. *See Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn. 1999).

> When some damage exists in the form of "the loss of a legal right," the focus of the inquiry is necessarily different. The category covers a much narrower class of cases where a person's legal right is changed involuntarily.
>
> *Antone*, which arose from a lawyer's failure to obtain a legally enforceable antenuptial agreement for a client, is a good example of such a case. By operation of Minnesota statute, entry into a marriage has immediate legal consequences, including the right of the new spouse to share in marital assets. *See, e.g.*, Minn. Stat. § 518.58 (2018) (discussing marital property division). To avoid the operation of that default rule, a party to a marriage must take an affirmative step—enter into an antenuptial agreement. In *Antone*, the failure of the lawyer to take that affirmative step, to prevent the loss of a legal right caused by operation of the default rule, was the relevant harm and caused some damage even if it could not be quantified in money at the moment the lawyer's client married. 720 N.W.2d at 335–36.
>
> For the loss of a legal right to cause some damage to accrue, then, the wrongful conduct must have allowed the claimant's legal rights to be adversely, immediately, and irredeemably changed involuntarily. *See id.* The change to and harm resulting from the change in a legal right must be concrete, locked in, and certain to occur. *See, e.g.*, *Frederick*, 907 N.W.2d at 179 (noting that damages flowed from the "separate negligent act" of incorporating an unenforceable antenuptial agreement into a will such that it irredeemably altered the client's interest in his marital assets for another six years); *Antone*, 720 N.W.2d at 337 (noting that the consequence of getting married was that the client "passed a point of no return").

*Hanson* 934 N.W.2d at 327.

Here, Appellant is not so much appealing the decision of the Bankruptcy Court, which properly applied the correct standard under Minnesota law, as she is appealing the Minnesota Supreme Court's rejection of the contingency requirement in a case in which the damage is the loss of a legal right. The decisions of the Minnesota Supreme Court are dispositive and controlling upon the issue of when the malpractice claim

8

arose under Minnesota law. *See, Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 917-18 (1979).

### 2. The Debtor's Homestead Exemption is not effective as of the moment of the bankruptcy filing.

In addition to applying a rejected standard under state law, the Appellant's argument on appeal is also based upon a misunderstanding of bankruptcy law. Appellant returns several time in her brief to her interpretation that, at the moment of her bankruptcy filing, her claimed exemption prevented her homestead from entering the bankruptcy estate, and that it was not until the Trustee successfully objected to the exemption that she lost control of her homestead real estate. Thus, she argues, she suffered no damage until the Trustee objected. The Appellant's interpretation is precisely the reverse of the bankruptcy law.

As of the commencement of the case, all legal and equitable interests of the debtor in property become property of the bankruptcy estate. 11 U.S.C. §541(a)(1). Conspicuous by its absence is any provision that states that all of the debtor's property *except* property claimed as exempt becomes property of the bankruptcy estate. It is only after the objection period passes without objection that the exemption becomes effective. This black letter provision of bankruptcy law has been confirmed by the United States Supreme Court on multiple occasions. *See Taylor v. Freeland & Kronz,* 503 U.S. 638, 642-43, 112 S.Ct. 1644, 1647-48 (1992) (indicating that all of a debtor's assets become property of the estate by operation of section 541, but section 522(l)

9


operates to make certain claimed property exempt from distribution if an objection is not filed); *see also Schwab v. Reilly*, 560 U.S. 770, 792, 130 S.Ct. 2652, 2667-68 (2010) ("If an interested party does not object to the claimed interest by the time the Rule 4003 period expires, title to the asset will remain with the estate pursuant to §541, and the debtor will be guaranteed a payment in the dollar amount of the exemption.")

The Bankruptcy Court correctly reflected this well established legal mechanism in its decision, stating:

> It was at the filing of the bankruptcy petition that the Debtor's interest in her homestead entered into the estate by operation of section 541(a)(1). Although the Debtor claimed the homestead exempt from the estate in accordance with section 522(b), the claimed homestead exemption did not become effective by operation of section 522(l) because a party in interest timely objected.

App.1 at 14.

The Appellant's arguments relating to the non-fulfillment of a contingency are premised upon her incorrect formulation of bankruptcy law. All assets become property of the bankruptcy estate immediately upon filing. Exemptions only become effective if the objection period passes without objection. Accordingly, even if the Appellant were correct that the contingency theory was the appropriate standard, the contingency upon which she relies was not a contingency at all. The homestead real estate was property of the bankruptcy estate, and not the Appellant, Debtor, from the moment of the commencement of the case.

### 3. The *In re Bounds* Case Squarely Supports the Decision of the Bankruptcy Court.

Appellant devotes a significant portion of her brief to the *In re Bounds* case, stating:

> The Trustee relied on Texas case law in support of its argument that the cause of action accrued on the date of filing of the bankruptcy petition and that the case of *In re: Bounds*, 495 B.R. 725 (2013) was similar to this case. … Both statements are far from true.

*Appellant's Brief* at 9.   While it is true the Trustee cited the *Bounds* case below, the Bankruptcy Court gives *Bounds* the briefest of mentions, and does not rely upon it to support its decision. *See* App.1 at 28. Thus, it is not clear why it is at issue on appeal. In any event, *Bounds* is nearly indistinguishable from the issue here, and squarely does supports the Bankruptcy Court's decision.

The *In re Bounds* case is an appeal from the United States Bankruptcy Court to the District Court in the Western District of Texas. *See In re Bounds*, 495 B.R. 725 (W.D. Tex. 2013). It is substantially similar to this case in that Texas, like Minnesota, applies the "some damage" standard to determine when a legal malpractice claim accrues. *See id.* at 729-30 ("cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred."). Moreover, the malpractice in *Bounds* was very similar to that alleged here. In *Bounds,* the debtor's attorney failed to advise him his homestead exemption would be limited to $170,350.00 pursuant to 11 U.S.C.

11

§522(q). *Id*. at 731. Section 522(q) limits the amount of homestead exemption a debtor may claim when they have proceeds from securities fraud. It operates identically to Section 522(p) which limited the Appellant's exemption in this case because she acquired a new homestead too proximate to her bankruptcy filing.

The Court in *Bounds* ruled exactly as the Bankruptcy Court did in this case, finding:

> Accordingly, the court finds that Bounds had suffered injury sufficient to give right to a rise to sue, even if he had not yet discovered the injury, at the time he followed his attorney's advice and filed for bankruptcy. … The court identifies the additional injuries of losing control of all other assets and exposing himself to "the specific and concrete risk" of losing his homestead which occurred at the time of the bankruptcy filing. *Citations omitted.* In summary, Chris Bounds legal-malpractice claims accrued "as of the commencement" of the bankruptcy case, even if he did not at that time know the full extent of his injuries.

*Id*. at 733. Thus, despite Appellant's contention to the contrary, it *is* true that the Court in *Bounds* applied the same state law standard as this case, to a malpractice claim based upon a very similar exemption statute, and ruled exactly as the Bankruptcy Court did in this case.[1]

## **CONCLUSION**

---

[1] The Appellant seems to distinguish *Bounds* because she asserts, "In *Bounds* the Trustee did not object to the claimed homestead exemption." *Appellant's Brief* at 9. While the opinion does not recite the fact of the objection, it clearly did occur. Section 522(q) is not self-executing. The trustee had to have objected to invoke it.

12

For the reasons stated above, the Trustee respectfully requests this Court enter its order denying Appellant's appeal and affirming the decision of the Bankruptcy Court.

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF MINNESOTA

_____

Sandra Jo Bruess,

        Appellant,

v.

Michael S. Dietz, Trustee,

        Appellee.

Civil. No. 19-CV-02714-JRT
Bky. No. 14-34922
Adv. No. 18-3097

**Certificate of Compliance**

_____

I hereby certify that the Brief of Appellee filed herein contains 2,802 words, excluding the table of contents, table of authorities and this Certificate of Compliance, as counted by the word-processing system, Microsoft Office Home and Business 2013 Word Version 15.0.5207.1000, used to generate the brief. The brief otherwise complies with requirements of Fed. Rul. Bankr. P. 8014(b), 8014(d), 8015(a), and 8015(b).

Dated February 19, 2020

Respectfully Submitted:

/e/ Michael S. Dietz
Michael S. Dietz (# 188517)
Aurora M. DeCook (# 0399875)
Dunlap & Seeger PA
30 3rd Street SE, Suite 400
Rochester, MN 55904
507-288-91111